# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| ACRA TURF CLUB, LLC, *et al.,* | : | |
| | : | |
| | : | |
| | : | |
| Plaintiffs, | : | Civil Action No. 12-2775 (MAS)(DEA) |
| | : | |
| v. | : | **MEMORANDUM OPINION** |
| | : | **AND ORDER** |
| | : | |
| FRANCESCO ZANZUCCKI | : | |
| | : | |
| Defendant. | : | |

**ARPERT, Magistrate Judge**

This matter comes before the Court on a Motion to Intervene, or, in the alternative, for leave to file an Amicus Brief, by the New Jersey Thoroughbred Horsemen's Association ("NJTHA") and the Standardbred Breeders' and Owners' Association of New Jersey ("SBOA") (collectively the "Horsemen") [Dkt. No. 101].[1] Plaintiffs and Defendant both oppose the Horsemen's Motion [Dkt. Nos. 108 and 106 respectively]. For the reasons set forth below, the Horsemen's Motion is GRANTED in part and DENIED in part.

---

[1] As part of the present Motion to Intervene, the Horsemen seek relief under Federal Rule of Civil Procedure 60(b) from the Court's Order, which was affirmed by the Third Circuit, denying their initial Motion to Intervene. The Horsemen argue that relief from the Court's Order is proper under Rule 60(b)(3), which provides relief from "a final judgment, order, or proceeding" because of "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." Fed. R. Civ. P. 60(b)(3). Additionally, a motion under 60(b)(3) must be made "no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1). The Court's Order denying the Horsemen's Motion to Intervene was entered on February 27, 2013, and the present Motion was filed on August 9, 2014, well after one year passed. Accordingly, the Horsemen's Motion for relief from the Court's Order under Rule 60(b), even if proper, would be denied as untimely.

## I.     BACKGROUND

### A. Brief Factual Background

This matter arises out of New Jersey's Off–Track Account Wagering Act ("OTAWA") and the Participation Agreement ("Agreement") between Plaintiffs and the State of New Jersey, which afforded Plaintiffs ownership, economic, and operational rights in off-track wagering facilities. Plaintiffs seek a declaratory judgment that three amendments which were subsequently enacted; (1) 2011 N.J. Laws 26, 2011 P.L. ch.26 (the "Forfeiture Amendment"); (2) 2011 N.J. Laws 205, 2011 P.L. ch.205, § 2 (the "Deposit Amendment"); and (3) 2011 N.J. Laws 228, 2011 P.L. ch.228 (the "Pilot Program Act")[2] (collectively "the Amendments"), violate Plaintiffs' constitutional rights under the Contracts Clause, the Fifth Amendment, and the Takings Clause, and violate Plaintiffs' Equal Protection and Substantive Due Process rights.

During the pendency of this matter, the State Attorney General stayed enforcement of the OTAWA, and, according to the Horsemen, has taken the position that the New Jersey Racing Commission (the "Commission") must work with industry leaders to develop a solution to the present problems. The Horsemen claim that because the Commission wants the horseracing industry, including the Horsemen, to develop a solution, "it has failed to protect the interests that the New Jersey Legislature has granted to the NJTHA to develop off-track wagering in New Jersey, and to obtain a right to other off-track wagering permits that [P]laintiffs fail to demonstrate progress to develop." Dkt. No. 101, Horsemen's Br. at p. 1-2.

---

[2] The Pilot Program, which was designed to assist the struggling horse racing industry and raise revenue, permitted each holder of a permit under the program to operate a maximum of twenty Off Track Wagering ("OTW") machine terminals in a maximum of twelve bars and restaurants throughout northern New Jersey. The Horsemen claim that the Pilot Program permitted a smaller-scale test to develop mini-OTWs within bars and restaurants, and although it was initially limited to northern New Jersey, if the Pilot Program was successful, it would eventually be expanded throughout the entire state. NJTHA has "taken actions to establish a Pilot Program at Jamie's Cigar Bar in Clifton, New Jersey." Horsemen's Br. at p. 10.

**B. Procedural History**

Relevant to the present Motion, NJTHA filed a Motion to Intervene and Dismiss the Complaint on July 27, 2012 [Dkt. No. 36], which was joined by SBOA on August 7, 2012 [Dkt. No. 39]. By Order dated August 13, 2012, the Court struck the elements of the Horsemen's Motion which sought to dismiss Plaintiffs' Complaint, finding that "unless and until the Court grants NJTHA and SBOA leave to intervene, their motions are premature." Dkt. No. 41 at p. 2. Subsequently, the Court denied the Motion to Intervene [Dkt. No. 72]. On June 27, 2013, NJTHA filed an appeal of the Court's decision with the Third Circuit [Dkt. No. 76]. The Third Circuit affirmed the Court's denial of the Motion to Intervene on March 31, 2014 [Dkt. 88]. The Horsemen filed the present Motion to Intervene on August 9, 2014 [Dkt. No. 101].

## II.     DISCUSSION

The Horsemen argue that although their first Motion to Intervene was denied, "a change in [Defendant's] legal position demonstrates that intervention is now warranted." Horsemen's Br. at p. 1. In opposition, Plaintiffs and Defendant argue that the Horsemen's Motion to Intervene has already been decided by this Court, and is improper under the law of the case doctrine, and that the Horsemen's interests continue to be adequately represented by the Attorney General.

"The law of the case doctrine acts to preclude review of those legal issues that the court in a prior appeal actually decided, either expressly or by implication." *Pendleton v. Nepa Cmty. Fed. Credit Union,* 303 Fed. Appx. 89, 90 (3d Cir. 2008) (citing *In re City of Philadelphia Litig.,* 158 F.3d 711, 718 (3d Cir. 1998)). Under the "law of the case" doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent states

3

of the same litigation." *In re Pharmacy Benefit Managers Antitrust Litig.,* 582 F.3d 432, 439 (3d Cir. 2009) (citation omitted). "This rule of practice promotes the finality and efficiency of the judicial process by protecting against the agitation of settled issues." *In re Continental Airlines, Inc.,* 279 F.3d 226, 233 (3d Cir. 2002) (quoting *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 816 (1988)).

However, because the law of the case doctrine "is a rule of discretion rather than a limit on authority, it does not apply in 'extraordinary circumstances.'" *Schneyder v. Smith,* 653 F.3d 313, 332 (3d Cir. 2011) (citations omitted). Extraordinary circumstances "include situations in which: (1) new evidence is available; (2) a supervening new law has been announced; or (3) the earlier decision was clearly erroneous and would create manifest injustice." *Id.* at 332-33 (citing *Pub. Interest Research Grp. V. Magnesium Elektron,* 123 F.3d 111, 116 (3d Cir. 1997)).

### A. Intervention as of Right

Pursuant to Federal Rule of Civil Procedure 24(a), "[o]n timely motion, the court must permit anyone to intervene who: (1) is given an unconditional right to intervene by a federal statute; or (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."

In their first Motion to Intervene, the Horsemen did not claim an unconditional right to intervene conferred by federal statute under Rule 24(a)(1). Instead, they argued a right to intervene under Rule 24(a)(2). A party seeking to intervene pursuant to Rule 24(a)(2) must demonstrate: (1) the motion to intervene is timely; (2) a sufficient interest in the underlying action has been established; (3) the interest will be impaired or affected by the disposition of the

4

underlying action; and (4) the interest is not adequately represented by an existing party to the litigation. *Liberty Mut. Ins. Co. v. Treesdale, Inc.,* 419 F.3d 216, 220 (3d Cir. 2005).

The Court, addressing the Horsemen's first Motion to Intervene, determined that:

> "[t]he limited issue in this action is whether the three challenged Amendments are constitutional. Here, NJTHA's and the SBOA's interests in establishing that the Amendments are constitutional are adequately represented by the Attorney General. In fact, the Attorney General is charged with defending the constitutionality of the law challenged here."

Dkt. No. 72 at p. 4. The Court found that NJTHA and SBOA failed to establish the fourth prong and overcome the presumption that the Attorney General adequately represented their interests. *Id.* Accordingly, because the Horsemen failed to demonstrate that their interests were "divergent from that of the Defendant," the Court denied the Horsemen's Motion to Intervene under Rule 24(a)(2). *Id.*

The Third Circuit, addressing the Horsemen's appeal, stated that "[i]n this situation 'a presumption of adequate representation generally arises when the representative is a governmental body or officer charged by law with representing the interests of the absentee." 561 Fed. Appx. 219, 222 (3d Cir. 2014) (citing Commonwealth of Pa. v. Rizzo, 530 F.2d 501, 505 (3d Cir. 1976)). The Third Circuit found that the "Attorney General is charged with defending the constitutionality of state statutes, N.J. Stat. Ann. § 52:17A-4, and there is no indication here that the Attorney General, as representative of the Commission, has not actively fulfilled his statutory role and vigorously defended the Amendments." *Id.* Further finding that "NJTHA and the Commission here have aligned interests: they both want the Amendments to be upheld and the off track wagering programs to succeed," the Third Circuit affirmed the Court's denial of the Horsemen's Motion to Intervene. *Id.*

In support of their present Motion to Intervene, the Horsemen argue that by permitting the Commission to stay enforcement of the Amendments, the Attorney General is "selectively choosing not to enforce the Laws of New Jersey" and therefore no longer adequately represents the Horsemen's rights. Horsemen's Br. at p. 16. In opposition, the Attorney General argues that the Commission's choice to stay enforcement of the Amendments pending the Court's resolution of their constitutionality "does not contravene the Act and is eminently reasonable under the circumstances" and states that the Attorney General "is fully and vigorously defending the enforceability of the Act." Def.'s Br. at P. 2.

While the Horsemen may disagree with the Attorney General's decisions in defending this matter, the Court finds that they have failed to demonstrate an extraordinary circumstance justifying a deviation from this Court's and the Third Circuit's prior rulings on this issue. Furthermore, even in the absence of the previous rulings denying the Horsemen's right of intervention, the Court finds that the Horsemen have again failed to demonstrate that the Attorney General does not adequately represent their interests in this matter. Therefore, because the Horsemen have not satisfied the requirements for intervention under Rule 24(a)(2), their Motion to Intervene is DENIED.

### B. Permissive Intervention

Under Federal Rule of Civil Procedure 24(b), "[o]n a timely motion, the court may permit anyone to intervene who: (A) is given a conditional right to intervene by federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact." When considering whether to exercise its discretion and allow intervention under Rule 24(b), "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

In denying the first Motion to Intervene under Rule 24(b), the Court found that where, as in this matter, "the interests of a party are already adequately represented . . . allowing intervention would be duplicative . . ." Dkt. No. 72 at p. 5 (citing *Hoots v. Commonwealth of Pa.*, 672 F.2d 1133, 1136 (3d Cir. 1982)). The Court further found that permitting the Horsemen to interject new claims would create undue delay "in stark contravention to the mandates of Rule 24(b)," especially because of the limitation of this matter to the constitutionality of the Amendments."[3] Dkt. No. 72 at p. 5.

The Third Circuit also affirmed the Court's decision to deny permissive intervention under Rule 24(b), finding that "[t]he District Court had good reason to deny permissive intervention" because:

> "where, as here, the interests of the applicant in every manner match those of an existing party and the party's representation is deemed adequate, the district court is well within its discretion in deciding that the applicant's contributions to the proceedings would be superfluous and that any resulting delay would be 'undue.'"

*Acra Turf Club, LLC,* 561 Fed. Appx. at 222 (citing *Hoots,* 672 F.2d at 1136). Accordingly, the Third Circuit held that "[t]he District Court appropriately exercised its discretion when it concluded that the Horsemen's interests are aligned with those of the Attorney General and its unrelated claims would delay the proceeding." *Id.*

In support of their present Motion, the Horsemen argue permissive intervention is proper because while the Court previously "exercised its discretion to deny intervention on the basis that

---

[3] Addressing the concern of undue delay, the Court noted that "NJTHA has (1) moved to dismiss, which ultimately was stricken by the Court as premature, (2) appealed the Court's decision to strike to the Third Circuit Court of Appeals, which dismissed the appeal for lack of jurisdiction, and (3) sought to file a supplemental brief, arguing in essence, the same points made in its motion to intervene." Dkt. No. 72 at n. 1. The Court now notes, as it relates to undue delay, that since the first Motion to Intervene was denied on February 27, 2013, NJTHA has (1) appealed the Court's decision denying its Motion to Intervene to the Third Circuit, which affirmed the Court's holding, and (2) filed the present Motion to Intervene.

NJTHA's additional claims would complicate the case . . . on this motion, the Horsemen [have] not raised any additional claims." Horsemen's Br. at p. 25. The Horsemen claim their present intention is only to "participate in the action to provide the Court with the benefit of its expertise . . ." *Id.*

The Court finds the Horsemen's argument unavailing. Although the Horsemen no longer seek to add new claims to this action, as previously noted, their interests are aligned with and adequately represented by an existing party. Therefore, it is still within the Court's discretion to decide that their "contributions to the proceedings would be superfluous and that any resulting delay would be 'undue.'" *Acra Turf Club, LLC,* 561 Fed. Appx. at 222 (citing *Hoots,* 672 F.2d at 1136). Accordingly, because the interests of the Horsemen are still aligned with those of the Attorney General, the Court finds that the Horsemen have failed to establish the existence of any extraordinary circumstance warranting a deviation from the Court's decision to deny the Horsemen's first Motion to Intervene or demonstrate the propriety of permissive intervention pursuant to Rule 24(b). Therefore, the Horsemen's Motion to Intervene under Rule 24(b) is DENIED.

### C. Request to File an Amicus Curiae Brief

As an alternative to intervention, the Horsemen request the Court's permission to file an amicus curiae brief in opposition to Plaintiffs' Motion for Summary Judgment [Dkt. No. 99] and in support of Defendant's Cross-Motion for Summary Judgment [Dkt. No. 100]. Plaintiffs and Defendant also oppose this request.

"District courts have the inherent authority to appoint amicus curiae to assist in their proceedings." *Price v. Corzine,* 06–1520, 2006 WL 2252208 (D.N.J. August 7, 2006) (citing *Liberty Resources, Inc. v. Phila. Hous. Auth.,* 395 F. Supp. 2d 206, 209 (E.D.Pa.2005)); *Avellino*

*v. Herron,* 991 F.Supp. 730, 732 (E.D.Pa.1998); *Liberty Lincoln Mercury, Inc. v. Ford Marketing Corp.,* 149 F.R.D. 65, 82 (D.N.J. 1993). "The extent, if any, to which an amicus curiae should be permitted to participate in a pending action is solely within the broad discretion of the district court." *Waste Mgmt. of Pa., Inc. v. City of York,* 162 F.R.D. 34, 36 (M.D.Pa. 1995) (citations omitted).

There is no rule in the district court governing the appearance of amicus curiae. Accordingly, district courts have been guided by the Third Circuit's application of Federal Rule of Appellate Procedure 29, which governs the appearance of amici in the circuit courts. *U.S. v. Alkaabi,* 223 F. Supp. 2d 583, 592 (D.N.J. 2002). However, "[a]t the trial level, where issues of fact as well as law predominate, the aid of amicus curiae may be less appropriate than at the appellate level." *Id.* at 592 n. 16. A motion to participate amicus curiae is generally granted when: (1) the amicus curiae has a "special interest" in the particular case; (2) the amicus curiae's interest is not represented competently or at all in the case; (3) the proffered information is timely and useful; and (4) the petitioner is not partial to a particular outcome in the case. *Liberty Resources, Inc.,* 395 F. Supp. 2d at 209.

Although the Horsemen may have a "special interest" in this case under the first prong and the information they seek to proffer may be timely and useful under the third prong, the Horsemen fail to meet to requirements of the second and fourth prong. Under the second prong, as previously discussed, the Horsemen have failed to demonstrate that their interests in this case are not competently represented by the existing parties. Under the fourth prong, the Horsemen admit that they are "interested in the outcome." Horsemen's Br. at p. 28.

However, in *Neonatology Associates, P.A. v. C.I.R.,* 293 F.3d 128 (3d Cir. 2002), the Third Circuit questioned the continued propriety of the second and fourth prongs when deciding

whether to allow the filing of an amicus brief. Addressing the second requirement, that the interests of the amicus curiae not be competently represented or at all in the case, the Third Circuit reasoned that "[e]ven when a party is very well represented, an amicus may provide important assistance to the court" by contributing: (1) "background or factual references that merit judicial notice"; (2) "particular expertise not possessed by any party to the case"; or (3) an explanation of "the impact a potential holding might have on an industry or other group." *Id.* at 132.

Regarding the fourth requirement, that the petitioner be impartial to the outcome of the case, the Third Circuit stated that the implication that "a strong advocate cannot truly be the court's friend . . . is contrary to the fundamental assumption of our adversary system that strong (but fair) advocacy on behalf of opposing views promotes sound decision making." *Id.* at 131. Accordingly, the Third Circuit found that "an amicus who makes a strong but responsible presentation in support of a party can truly serve as the court's friend." *Id.*

Here, the Horsemen wish to present historical information to the Court regarding the OTAWA Amendments in 2011 and the Pilot Program, which the Horsemen claim has not been provided to the Court by the parties. The Horsemen argue that this historical information is required for the Court to "find that the Legislature had a rational basis for amending the OTAWA and creating the pilot program." Dkt. No. 109, Horsemen's Reply Br. at p. 2.

Although the delay caused by the Horsemen in relitigating previously decided issues gives the Court pause in granting their request to file an amicus brief, in order to preclude the possibility that a resource that could have been of assistance is absent from the record, will grant the Horsemen leave to file an amicus brief setting forth the history they believe is required to complete the record before the Court. *See Neonatology Associates, P.A.,* 293 F.3d at 133 ("[I]t is

preferable to err on the side of granting leave . . . [and] if an amicus brief that turns out to be unhelpful is filed, the [Court] . . . can simply disregard the amicus brief.").

## III.    CONCLUSION AND ORDER

Having considered the papers submitted pursuant to Fed. R. Civ. P. 78 and for the reasons set forth above;

**IT IS** on this 28th day of October, 2014,

**ORDERED** that NJTHA and SBOA's Motion to Intervene, or in the alternative, for leave to file an Amicus Brief [Dkt. No. 101] is **GRANTED** in part and **DENIED** in part; and it is further

**ORDERED** that NJTHA and SBOA's Motion to Intervene under Federal Rule of Civil Procedure 24(a) is **DENIED**; and it is further

**ORDERED** that NJTHA and SBOA's Motion to Intervene under Federal Rule of Civil Procedure 24(b) is **DENIED**; and it is further

**ORDERED** that NJTHA and SBOA's Motion for leave to file an Amicus Brief is **GRANTED**; and it is further

**ORDERED** that NJTHA and SBOA may jointly file a single Amicus Brief, which complies with the requirements of Local Civil Rule 7.2, within 30 days of the entry of this Order.

Dated: October 28, 2014                          /s/ Douglas E. Arpert
                                                 DOUGLAS E. ARPERT
                                                 United States Magistrate Judge