**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ACRA TURF CLUB, LLC, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>FRANCESCO ZANZUCCKI,<br><br>Defendant. | Civil Action No. 12-2775 (MAS) (DEA)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court on Defendant Francesco Zanzuccki's ("Defendant" or "Zanzuccki") Motion for Summary Judgment (ECF No. 126) and Plaintiffs ACRA Turf Club, LLC ("ACRA") and Freehold Raceway Off Track, LLC's ("Freehold") (collectively with ACRA, "Plaintiffs") Cross Motion for Summary Judgment (ECF No. 129). The parties have fully briefed the motions, and the Court, having carefully considered the parties' submissions, decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, Defendant's motion is granted and Plaintiffs' cross motion is denied.[1]

---

[1] In their brief in support of their Cross Motion for Summary Judgment, Plaintiffs request reconsideration of the Courts' prior ruling. (Pls.' Moving Br. 23-26, ECF No. 129-1.) The Court will address this request in a separate opinion.

I.   **Background[2] & Procedural History**

This case involves a challenge to the constitutionality of certain amendments to the New Jersey Off-Track and Account Wagering Act, N.J.S.A. 5:5-127 to -160 (the "Act" or "OTAWA"). The Act, which was passed to aid the horse racing industry in New Jersey, established a licensing scheme to allow certain entities to establish off-track wagering on horse races. Pursuant to the Act, the New Jersey Racing Commission ("NJRC") was permitted to issue fifteen licenses, which were to be used to conduct off-track wagering at specified facilities. N.J.S.A. 5:5-136(a). Also pursuant to this Act, six licenses were allocated to Plaintiffs ACRA and Freehold and nine licenses were allocated to the New Jersey Sports Exposition Authority ("NJSEA") (collectively with ACRA and Freehold "permit holders"). (Compl. Ex. A, § 1.1, ECF No. 1-1.)

Notwithstanding the allocation of fifteen licenses in 2003, as of March 23, 2015 only five off-track wagering facilities were operational. (Cert. of Francesco Zanzuccki ("Zanzuccki Cert.") ¶ 5, ECF No. 126-2.) Given the limited utilization of the licenses, in 2011 the State amended the Act in order to compel permit holders to make use of, or forfeit, their unused licenses. On February 23, 2011, Public Law 2011, chapter 26 (the "Forfeiture Amendment") was enacted. The Forfeiture Amendment primarily imposed a requirement that a permit holder make a showing to the NJRC that it had made progress towards establishing an off-track wagering facility by January 1, 2012, and on an annual basis thereafter until a license is obtained, or otherwise forfeit the right to the license. *See* P.L. 2011, c. 26.

Roughly one year after the enactment of the Forfeiture Amendment, the legislature enacted the Pilot Program Act (the "Pilot Program"), Public Law 2011, chapter 228 (codified at N.J.S.A.

---

[2] The background for this dispute is set forth in detail in this Court's decision on the parties' previous motions for summary judgment. (ECF No. 120.) Accordingly, only the facts relevant to the motions sub judice are included herein.

2

5:5-186). The Pilot Program directs the NJRC to "implement a pilot program to license a lessee or purchaser of a State-owned racetrack to provide patrons with the ability to place wagers on horse races through electronic wagering terminals to be located at a limited number of eligible taverns, restaurants, and similar venues." N.J.S.A. 5:5-186. The Pilot Program allows an entity that has purchased or leased a racetrack from the NJSEA to exchange an unused OTW License for a license "for the establishment of not more than 12 qualified taverns, restaurants, and similar venues, of not more than 20 electronic wagering terminals." ("PP License"). N.J.S.A. 5:5-186(a). The establishment of wagering terminals under the PP License is limited to the northern half of the State, and the NJRC is directed to deny a PP License if the planned venue is too close to an existing off-track wagering facility or racetrack. *See* N.J.S.A. 5:5-186(b).

On May 9, 2012, Plaintiffs filed a four-count complaint, seeking a declaration that, inter alia, the Forfeiture Amendment was unconstitutional under the Contract, Takings, Equal Protection, and Due Process Clauses, and that the Pilot Program was unconstitutional under the Contract and Equal Protection Clauses.[3] (Compl. ¶¶ 97-129, ECF No. 1.) Plaintiffs also seek to enjoin the enforcement of the offending laws and any related regulations. (*Id.*)

Plaintiffs previously moved for summary judgment, and Defendant cross moved for dismissal in October 2012. (ECF Nos. 50, 59.) The Court granted Defendant's motion, holding that *Younger* abstention mandated dismissal. (ECF Nos. 82, 83.) Based in part on an intervening decision of the United States Supreme Court, the Third Circuit reversed that decision. *ACRA Turf Club, LLC v. Zanzuccki*, 748 F.3d 127 (3d Cir. 2014). Thereafter, the case was remanded to this

---

[3] Plaintiffs also moved for a declaration regarding the constitutionality of another amendment, referred to as the "Deposit Amendment." In its previous decision, this Court ruled that the constitutional challenge to the Deposit Amendment is moot because it is no longer in effect. (Op. on Second SJ Motions 8, ECF 120.)

3

Court (ECF No. 90), and Plaintiff filed a second motion for summary judgment on both the first and second counts of the complaint, which request a declaration that the offending statutes are unconstitutional under the Contract and Takings Clauses and a permanent injunction barring their enforcement (ECF No. 99). Defendant cross-moved for adjudication and dismissal of those same counts. (ECF No. 100.) The Court denied Plaintiffs' motion for summary judgment and granted Defendant's cross motion. (Op. on Second SJ Motions, ECF No. 120.)

## II. Legal Standard

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if the record shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Here, this standard is uncomplicated because the parties both agree that there are no genuine disputes of material fact. As a result, the parties' motions present a purely legal determination, and the matter is ripe for summary judgment.

## III. Analysis

Defendant moves for adjudication and dismissal on both Counts IIII and IV of the Complaint, which request a declaration that the Forfeiture Amendment is unconstitutional under the Due Process and Equal Protection Clauses, that the Pilot Program is unconstitutional under the Equal Protection Clause, and a permanent injunction barring the enforcement of both the Forfeiture Amendment and the Pilot Program. Plaintiffs cross move for summary judgment on these Counts.

### A. Presumption of Constitutionality

It is a basic tenet of constitutional law that legislative acts are presumptively constitutional and the "burden to prove invalidity is a heavy one." *Planned Parenthood v. Farmer*, 165 N.J. 609, 619 (2000) (quoting *Bell v. Twp. of Stafford*, 110 N.J. 384, 394 (1988)); *see also Close v. Glenwood*

4

*Cemetery*, 107 U.S. 466, 475 (1883) ("[E]very legislative act is to be presumed to be a constitutional exercise of legislative power until the contrary is clearly established . . . .") (internal citations omitted). When presented with two possible interpretations of a statute, "courts should adopt the meaning" which finds the statute constitutional. *Sebelius*, 132 S. Ct. at 2593; *see also Blodgett v. Holden*, 275 U.S. 142, 148 (1927) (J. Holmes, concurring) ("[T]he rule is settled that as between two possible interpretations of a statute, by one of which it would be unconstitutional and by the other valid, our plain duty is to adopt that which will save the Act."). Here, Plaintiffs challenge the presumption of constitutionality by arguing that the Forfeiture Amendment violates the Equal Protection and Due Process Clauses of the Constitution and the Pilot Program violates the Equal Protection Clause. Each constitutional challenge will be addressed in turn.

**B.     Count IV: Violation of the Equal Protection Clause**

The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. Courts have interpreted this clause to mean that all persons similarly situated should be treated alike. *Plyler v. Doe*, 457 U.S. 202, 216 (1982). In testing the validity of state legislation that is alleged to deny equal protection, the "general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *City of Cleburn v. Cleburne Living Ctr.*, 473 U.S. 432, 439-40 (1985). Thus, legislation that results in disparate treatment does not run afoul of the Equal Protection Clause so long as the disparate treatment is related to a legitimate interest. To evaluate this relationship, the parties agree that the Court must apply a "rational basis" level of scrutiny. (Def.'s Moving Br. 26, ECF No. 126-1; Pls.' Moving Br. 12, ECF No. 129-1.)

Rational basis review requires "a rational relationship between the disparity of treatment and some legitimate governmental purpose." *Heller v. Doe by Doe*, 509 U.S. 312, 320 (1993). A classification "must be upheld against an equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Id.* (internal citation omitted). "[A] legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data." *Id.* (internal citation omitted). "[C]ourts are compelled under rational-basis review to accept a legislature's generalizations even when there is an imperfect fit between means and ends." *Id.* at 321.

### 1. Forfeiture Amendment

Here, Plaintiffs argue that the "sale/lease" exception to the Forfeiture Amendment results in the disparate treatment of State-owned racetracks on one hand and privately-owned racetracks, such as those owned by Plaintiffs, on the other. (Pls.' Moving Br. 16.) In particular, Plaintiffs argue that under the Forfeiture Amendment only State-owned racetracks may avoid forfeiture by showing that the "track has entered into an agreement or was engaged in the negotiations for the sale or lease of a racetrack." N.J.S.A. 5:5-130b. Defendant, however, contends that this reading of the Forfeiture Amendment is erroneous and that "[c]ontrary to Plaintiffs' position, this [sales/lease exception] is not limited to State-owned racetracks." (Def.'s Reply Br. 7-8, ECF No. 131.) Accordingly, Defendant asserts that "the claimed disparate treatment simply does not exist." *Id.* The Court agrees.

The Forfeiture Amendment provides, in pertinent part, that "a permit holder shall be deemed to have made progress toward establishing its share of off-track wagering facilities . . . if it has entered into good faith negotiations over the sale or lease of a racetrack." N.J.S.A. 5:5-130b(1). Nothing in this provision prohibits privately-owned racetracks from utilizing this

6

provision to avoid forfeiture. Given that the Forfeiture Amendment does not result in the disparate treatment of privately-owned and State-owned racetracks, the Court need not consider whether there is a rational basis for such disparate treatment. Accordingly, the Forfeiture Amendment does not violate the Equal Protection Clause.

### 2. Pilot Program

Plaintiffs argue that the Pilot Program violates the Equal Protection Clause because it "allows the lessee or purchaser of a NJSEA-owned racetrack to convert one unused OTW license into the right to establish 12 additional OTW facilities containing up to 20 electronic wagering terminals, while denying the equivalent rights to Plaintiffs." (Pls.' Moving Br. 12.) Plaintiffs contend that there is no basis–rational or otherwise–for this disparate treatment. (*Id.*) Defendant does not dispute that the Pilot Program is currently limited to State-owned racetracks. (Def.'s Reply Br. 8 n.1.) Thus, the Pilot Program results in the disparate treatment of State-owned racetracks on the one hand and privately-owned racetracks on the other hand. Defendant, however, contends that the "Pilot Program represents a rational experimental effort at evaluating a new form of OTW in a measured manner while scrupulously ensuring that the program will not impair the interests of other OTW permit holders." (Def.'s Moving Br. 30.) In addition, Defendant asserts that the decision to start this program with State-owned racetracks is related to the legitimate purpose of making the industry less dependent on state subsidies. (*Id.*) This rationale for the disparate treatment of State-owned and private-owned racetracks is sufficient to survive rational basis scrutiny. Furthermore, the Court agrees that the Equal Protection Clause does not mandate that Plaintiffs be given access to this experimental program at this time. (*Id.*) Accordingly, the Pilot Program does not violate the Equal Protection Clause.

### C. Count III: Violation of the Due Process Clause

The Fifth Amendment Due Process Clause provides, in relevant part, that "[n]o person shall be . . . deprived of . . property, without due process of law." U.S. Const. amend. V; *accord* N.J. Const. Art. I, para. I. The Supreme Court has held that the Due Process Clause has a substantive component. *Planned Parenthood of S.E. Pa. v. Casey*, 505 U.S. 833, 846-47 (1992). To survive a substantive due process challenge, a statute must be rationally related to a legitimate state interest. *Am. Express Travel Related Serv. Co., Inc. v. Sidamon-Eristoff*, 755 F. Supp. 2d 556, 574 (D.N.J. 2010).

Plaintiffs argue that the Forfeiture Amendment fails this test. (Pls.' Moving Br. 18.) Specifically, Plaintiffs contend that the Forfeiture Amendment deprives them of rights set forth in an agreement related to the Act (the "Participation Agreement") without due process of law, and this deprivation is not rationally related to a legitimate state interest. (*Id.* at 18.)

Here, the Legislature has determined that "[t]he horse racing industry is economically important to this State, and the general welfare of the people of the State will be promoted by the advancement of horse racing and related projects and facilities in New Jersey." N.J.S.A. 5:5-128a. Defendant argues that the Forfeiture Amendment furthers this legitimate interest by facilitating the development of OTW facilities, which has so far progressed at a "glacial pace." (Def.'s Moving Br. 23, 25.) "[A] legislative act will withstand substantive due process challenge if the government 'identifies a legitimate state interest that the legislature could rationally conclude was served by the statute.'" *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 139 (3d Cir. 2000) (quoting *Alexander v. Whitman*, 114 F.3d 1392, 1403 (3d Cir. 1997)). The Court finds that the Legislature could rationally conclude that the Forfeiture Amendment expedited the implementation of off-track wagering facilities, which supported the horse racing industry, by compelling Plaintiffs to apply

8

for OTW Licenses previously allocated to them, or make progress to that effect, or risk forfeiting those licenses. Thus, the Forfeiture Amendment does not violate the Due Process Clause.

IV.     **Conclusion**

For the reasons set forth above, Defendant's motion for summary judgment on the remaining Third and Fourth Counts of Plaintiffs' Complaint is granted, Plaintiff's cross motion for summary judgment on the Third and Fourth Counts of the Complaint is denied. The Court will address Plaintiffs' request for reconsideration of the Courts' prior ruling in a separate decision.

       s/ Michael A. Shipp
       MICHAEL A. SHIPP
       UNITED STATES DISTRICT JUDGE

**Dated:** October 30, 2015